have had to be made by all of you and all of us to deal with the weather and all the other vagaries here. The only case on our afternoon dock of today is the United States v. Huang. If I've pronounced that correctly, I don't know, but Mr. Avery. Your Honor, I've named Mr. Huang, so just for my comfort level, that's what I'll call him. That's my understanding of what his name is. And I really appreciate your guys' accommodations. There are some really important issues that need to be fleshed out. I'm David Avery. I'm in the Missoula branch of the Federal Defender's Office on behalf of Huang. Excuse me one moment, Mr. Avery. I don't know if you're on a speaker phone or not, but you're cutting out some of the time. We can hear not everything that you're saying. Would you prefer that I pick the – I think it might help us quite a bit. Would you try that? We'll try that, Your Honor. One second here. Okay, is that better? Much better. Thank you so much. Okay. I wasn't prepared for this, but I'll – okay, here we go. I'd like to say, again, thank you on behalf of Mr. Huang for the opportunity to address some important issues here. I don't know what the protocol is with respect to rebuttal in a phone conference situation like this. I was planning on asking for two or three minutes rebuttal time, but if that's kind of a – We'll try to let you know when our clock shows that you have that amount of time left. We'll try to accommodate the difficulties of the situation. Thank you, Your Honor. I'm looking at a clock right now, so I can – I sense what time it is. Okay. I would appreciate your addressing the question of the instruction. The instruction. Do you want me to go ahead and get to that right off the bat? I would appreciate that. That's an issue, at least as far as I'm concerned, this is Judge Graber speaking, that is of the most concern. Your Honor, can you maybe even more specifically focus me? Because I see that there are kind of two problems here. There are some instructions that were given, and then there were some instructions that were refused. And although the overall error is extremely related, I would guess that maybe the court's interested in the ones – they're unusual in that I haven't seen much case law about instructions based on the smuggling statute. There's the one case that I cited which said that the presumption instruction was bad, and then there was the one case that the government cited for the proposition that it was okay. And then both of those cases are pre-Sandstrom and pre-Corrella v. California and all the, I think, relevant case law. So I guess to re-ask my question, are you interested in my comments about – Yes. Tell us why you think it's no good. The ones that were given? Yes. Okay. First of all, I think that the presumption instruction basically focused on whether or not there's marijuana in the concealed compartment in this trailer, and then told the jury that it had to consider that to be enough evidence to convict him of that charge. I mean, it shall be deemed sufficient evidence for conviction. Even if the jury doesn't end up deeming it sufficient evidence, the judge has kind of intruded into the jury's province and said it shall be deemed, that's enough. And the main problem that I have, or that Mr. Huang has, is that there's only one disputed element here, and that's whether he knew there was marijuana in the concealed compartment, and that element goes to all three charges. And so you get this jury instruction by way of the smuggling statute, and suddenly all three of the charges, which, you know, there's not a double jeopardy problem with conspiracy to import or with attempted importation and smuggling, but nobody has ever maintained otherwise that the only thing that needed to be proven or disproved or left open to the jury is whether Mr. Huang knew about the marijuana in this expertly concealed compartment in the trailer. And so suddenly the jury is told that, you know, if there's marijuana there, if you find that there's marijuana there, that that shall be deemed sufficient evidence. And then they're told, and I think this was supposed to be curative language, that they may infer that there's knowledge if they find that the marijuana is there. And I'm not sure how curative that is. To me, it actually compounds the problem. Mr. Avery, this is Judge Solomon. Let me talk with you about the analytical approach that we ought to follow. Sure. I understand completely your argument with regard to the concern on the instruction under 545. But it seems to me that as a reviewing court, we need to look at the instructions as a whole. And as I read the instructions, it looked to me like the district court gave the jury an instruction with regard to the government's requirement of proving beyond a reasonable doubt each element of the three crimes that were charged. And then the judge gave the jury either the statutory words of the crimes or identified each element of the three counts of the indictment. Then with regard to count two, he read them the language of 545, which includes the presumption, but then later gave what I'll call the permissive inference instruction to tell them that they were not required to apply it. And as I read our in-bank decision after Sandstrom, and I believe there was another Ninth Circuit three-judge panel case that followed that, doesn't that address the concern that you are raising with regard to the due process violation that this somehow shifted the burden of explanation to the defendant? Your Honor, I think you're talking about the Rubio-Villareal case. One, and also the, as I recall, Rubio-Villareal was the in-bank case, but then we have Beltran-Garcia that follows that. I welcome your question. I'd like to talk about both those cases. And in the Rubio, I'm just going to call it Rubio because I have a problem with pronouncing the second part of that defendant's name, but there was a similar instruction in that case that read the government's burden, quote-unquote, never shifts to the defendant, for the law never imposes on a defendant in a criminal case the burden or duty of calling any witnesses or producing any evidence. So if the jury, after careful and impartial consideration of all the evidence, has a reasonable doubt, then the defendant's not guilty and there must be acquittal. And so that kind of instruction was given in Rubio, and this court, your court, said that that wasn't enough because it just wasn't clear how the problematic inference instruction might have tainted the jury's deliberation. But there wasn't a permissive inference instruction given in Rubio-Villareal, was there? The instruction in that case was, quote-unquote, you are instructed that if you find that the defendant was the driver of a vehicle containing contraband in this case, and if you find that the cocaine was found inside that vehicle and concealed in its body, you may infer from these two facts that the defendant knew that the cocaine was in the automobile. However, you are never required to make this inference. It is the exclusive province of the jury to determine whether the facts and the circumstances shown by the evidence, in this case, warrants an inference which the law permits. So, I mean, I think the instructions are dramatically similar. And then I would contrast the Beltran-Garcia instruction, which says that, first of all, the district court there gave a defense theory jury instruction and basically said the government's case is that he knew about these hidden drugs, and the defense's case is that, yes, there were drugs in the car, but the defendant didn't know about them. And if you find the defendant's theory to be plausible or there's a reasonable doubt, then you must acquit. And then the court instructed that you, the jurors, may infer, but you're not required, that a defendant or a person intends the natural consequences of acts that are knowingly done. And so that's a much more vague jury instruction, not one that points to an irrefutable fact like that was true in both that case and this case. And if there's marijuana in the vehicle in both of those cases, focuses on that fact and then tells the jury they can find the only contested element, which is whether the driver knew about the drugs. And in this case, it's the only contested element with respect to all three charges, not just one. 8 years later, which discusses Rubio-Villareal and states, and I'm looking at page 1204 at 179 Fed 3rd, that the permissive inference instruction is still used in the Ninth Circuit, but the problem can be avoided if the other instructions condition and qualify the permissive inference instruction so as to make it clear that the judge is not implying to how the jury should return a guilty verdict and that the things that we look to include whether or not the jury was instructed as to the proof beyond a reasonable doubt, as to each element of the offenses, and make it clear that the court was not telling the jury, this is what I think you should find. And so that suggests to me that by looking at all the instructions as a whole, that these instructions are still okay, although obviously they are fraught with difficulty. And I guess as Judge Reimer has indicated in her concurrence in Warren, it's a dangerous instruction with little benefit, but I don't know that we've, that we can read Rubio-Villareal as broadly as you do and say that that in-bank decision struck these instructions for all time. I just don't see that in our subsequent case law. Well, I mean, the first thing, I guess the thing that strikes me the most to respond to that is that the district court in this case refused to instruct the jury that to possess something, you have to know it's there. I mean, that is a standard jury instruction. In this case, begged for that jury instruction to be given, and it was asked for by Mr. Wong's trial counsel, please tell the jury that he didn't possess this for the purposes of the rest of these instructions, unless he knew it was in this expertly concealed compartment. And I can't fathom why that jury instruction wasn't given. In this case, I mean, more so than any case I'm familiar with, I mean, that's the only disputed issue is, did he know that there was marijuana in this concealed compartment? It took two or three hours for the people who were looking for that concealed compartment to find it, even though the truck had been designated for 100% inspection. There was no smell of marijuana in the trailer. Even after the drug dog alluded to the front of the trailer, still they looked down below and there's nothing there, so they go into the very front of the trailer. And so, I mean, it was a two-day trial about whether he knew that was there, and yet there's a bunch of instructions that talk about, you know, that hinge on whether he possessed. And the jury has not given the legal definition of what possession means. I mean, I think if you want to save some rebuttal time, you're down to about a minute. Okay. And if there are any more questions, I would answer them now. If not, then I will save a minute or two for rebuttal. Okay. We'll give you a couple of minutes because we were a little slow getting everything set up in the beginning. Okay. Thank you very much. We'll hear now from the government. Thank you, Your Honor. Good afternoon. My name is Joe Thagard. I'm an assistant U.S. attorney from Great Falls, Montana, and I represent the government in this matter. Addressing a couple of the issues raised by Judge Tallman, and I think that Judge Tallman adequately stated the procedural approach we need to take to these instructions. Well, tell me what it is about these instructions that really informed the jury that it was entirely within its province to decide whether or not the defendant knew of the hidden drugs in the truck. And, Judge, and I would refer the Court to what's been referred to as the permissive inference instruction here. And that simply tells the jury that they may infer from the defendant's possession of marijuana that he knowingly possessed it. And also the Court cautioned the jury by saying you are not, however, required to make an inference. It is entirely up to you to decide what facts defined from the evidence received during the trial. How is that different from the Rubio-Villareal instruction, if it is? I think it is, Judge, and I guess what the way I would pose it is I think it falls within Beltran-Garcia. And I think it falls within Beltran-Garcia to the extent that it's cautioning the jury, again, that this is inferential in nature, that it is something that is not mandatory. And so I guess my response to your question is that this is the sort of instruction, at least the government suggests to the Court, that is permissible under Beltran-Garcia. And it's different than Rubio-Villareal. What is the distinction, in your view, between what is allowed in Beltran and what is disallowed in Rubio? How would you explain the rule that you would like us to or the understanding you would like us to draw about what's okay and what's not okay? Sure. And I think that there are a couple areas. I think, first, that I think the two cases, Beltran-Garcia and Rubio-Villareal, are distinguished to the extent that the jury in Beltran-Garcia is told that it has to consider all the facts. And it's not focusing on one fact. And that's not a problem for you here. I mean, I think you're right. That's something the Court emphasizes there. And indeed says the Court did not instruct the jury that Garcia could be convicted merely because he drove a car containing marijuana. As I read the instructions given here, that's pretty much the instruction that was given. He could be convicted because he drove the truck. And, Judge, I think if we were to look at those instructions, the permissive inference instruction and the 545 instruction, in isolation from the elements instruction, that there would be a problem there. Don't you think both of those other cases, I mean, I haven't gone back to look at them with this in mind, but it seems to me that every case includes an elements instruction. The elements of the crime are A, B, and C. Otherwise, they'd be flawed. I mean, that's a basic requirement. So Beltran and Rubio can't be different because one had the elements and one didn't. No. And I agree with that, Judge. And I was just responding to the question about whether or not, you know, this particular instruction that was given in Mr. Wong's case somehow focused on a particular fact. Well, let me return to that, then. I mean, Beltran emphasizes the Court did not give that kind of instruction. It seems to me the Court here did give that kind of instruction. And you can suggest that it's saved by other instructions that are given, but doesn't that suggest that our case doesn't fit under Beltran because exactly the offending instruction was given in our case? Well, I think that that's obviously something that needs to be considered. But I think that we also do have to consider the fact that there is this additional elements instruction and that it does make it very clear what the government's burden is here. And with respect to the inference instruction, again, I simply hearken back to the fact that it does tell the jury you're not required to make such an inference. Now, you were the – I want to be sure I've heard your complete answer about that. Certainly, Judge. What are the differences between Beltran and Rubio that are decisionally important for us? And the first one, which both Judge Clifton and I have been asking you about, is whether the jury is expressly told it must consider all the facts and no one fact leads to a particular result. Is there anything else in your view that is a rule or a principle that we should divide from the difference between those two cases as to how we? Yeah. And I think the other thing there, Judge, is that in Beltran-Garcia, the court placed a lot of emphasis on the fact that the instruction there did not imply that the court said there was sufficient evidence that would somehow lead a jury to believe that the court was somehow essentially giving a directed verdict. And, again, I think that's a distinction in this matter. Well, what – the instruction in Rubio, though, was a permissive, supposedly permissive instruction as well, wasn't it? Yes, it was, Judge. So what's different about that from our own case here? Well, again, I think, as I've said, one is, I think, that it didn't focus on a specific fact. It told the jury to consider all the evidence. And, again, I think, you know, we have to look at the elements of instruction. And it's very clear that the United States continues to bear the burden of proving knowledge. But that wouldn't be different, again, from Rubio either. No, it wouldn't, Judge. Because every case includes proof beyond a reasonable doubt. Every case includes the elements. Yes. And I would agree with that, Judge. If it's not enough to save it in Rubio, why does it save it here? Well, as I say, returning to this particular instruction and looking at this particular instruction, as again, as I say, it doesn't focus on certain facts. And it tells the jury to consider all the evidence. And so that's where I just come to a pause. You say it doesn't specify certain facts. And it seems to me it's exactly what it does do. It focuses on driving the truck being enough to establish possession. Yes. Yes, that is true, Your Honor. Well, does it do that? I mean, I'm looking at page, I guess it's ER 567, the instruction that was actually given. After he quotes the language of the statute, Judge Haddon says, now with respect to this attempted smuggling charge containing count two of the superseding indictment, if after considering all of the evidence introduced at trial, you find beyond a reasonable doubt that the defendant possessed marijuana, which he attempted to smuggle into the United States, you may infer from the defendant's possession of the marijuana and the absence of a satisfactory explanation that he knowingly possessed such marijuana. You are not, however, required to make such an inference. It is entirely up to you to decide what facts to find from the evidence received during the trial. That, to me, basically synthesizes all three instructions into one instruction without saying because he was the sole driver of the cab, because he owned the other trailer that had a hidden compartment in it. He doesn't say any of that. And to me that's a – maybe I'm the only one who reads it that way, but that appears to me to be a different instruction from the woman. And, Judge, frankly, you've just articulated far better than I have in the last nearly seven minutes here what I've been trying to say. And I think that it does provide a different instruction than is condemned by Rubio Villareal. Let me ask you another thing that is of concern to me about the jury's reaction to an instruction of this kind. Part of opposing counsel's argument is that possession isn't defined and that a lay person would think of it in just the broadest sense of, well, obviously he possessed it, he was driving the truck and it was there, so it was in his possession. What, in your view, in these instructions required, if anything, required a more legally sound or sophisticated understanding of possession on the part of the jury? Well, and I think what we have to look at there is that the jury was instructed with respect to each of the counts that the defendant either acted with knowledge or knew or acted knowingly and was advised of the definition of knowingly under Ninth Circuit law. But what's peculiar about the instruction we've been discussing is it says if you find that he possessed, then you find that he knew. And so logically, a juror listening to that would say, well, I don't first have to find that he knew, all I have to find is that he possessed, and so it must mean something less or different than knowing. Yes. Because if you possess, then you know. So it doesn't incorporate that to me unless they're told that. What is your response to that concern? And that is a legitimate concern, Judge. And, again, hearkening back to the elements instructions, for example, with respect to count three, the jury was told that they had to find that he knew it was marijuana or some other prohibitive drug that he knowingly attempted to bring into the United States. And it just seems to me that that is clear enough. And given the ---- And you don't think that a jury would be confused by then hearing that if he possessed it, then you can infer that he knew it, and then they might carry that back into the other part of their delivery? You know, I don't think so, Judge. And the reason I don't think so, again, is because they were also told, but it's entirely up to you what evidence to find, what facts to find from the evidence of this case. And I believe that a jury is going to follow that approach. And ---- I am absolutely confident that the jury made every effort to follow the instructions. I really trust juries a lot, but I think these, to me, these instructions are confusing insofar as they don't tell the jury what it means to possess. Therefore, from that, you may infer knowledge, because that implies that knowledge isn't part of possession. And I understand that. But when we look at the elements instructions, they are told that, you know, the defendant with respect to count one had to know about the object of the conspiracy. With respect to count two, knowledge is addressed, again, with respect to the marijuana or merchandise which he should have presented. With count three, he had to act knowingly with what he attempted to bring into the country. And I think when you talk about knowingly and the phrase bring in, I think that that gets to the heart of possession. And I think when we talk about knowingly, and this is another important aspect, I think, that is somewhat distinctive in this. I know a specific instruction was not given to the jury about the defense theory of the case, but that definition of knowingly did talk about the fact that one can't act knowingly if it's through mistake or ignorance or things of that nature. And so I think that that may, in some sense, have been an instruction on the defense theory of the case. And I think it allowed the defense to make a cogent argument to the jury about that. Counsel, let me ask you. Assume that we find a problem with the instructions under 545. Would we have to remand for retrial as to all counts, or can the count one conspiracy stand on its own based on the evidence against the defense? Judge, I think that both count one and count three would stand on their own. And, again, we have to read the instructions as a whole, and we have to recall that the jury was given specific elements instructions for each count of the indictment. And I think that it was very clear with respect to both the 545 smuggling definition and the permissive inference instruction that the language in both those instructions was restricted to count two. And I don't think there's anything in the record to suggest that the jury would have spilled those instructions over, so to speak, with respect to counts one and three. And so the government's position would be that counts one and three do survive, regardless of what the results. I have a question with regard to sentences. I understand that the court sentenced concurrently, and it was a 65-month sentence, I think, on count two, concurrent with a 120-month sentence on count one. Is that right? Yes, Judge. So as a practical matter, what difference would it make if there was error as to count one? It makes no difference if a reversal were to occur only on count two. Don't we have cases that say that we are still required to have the district court resentenced in that circumstance? You know, and I think that would be appropriate. But it would only be a remand for resentencing as opposed to a remand for retrial on counts one and three. Well, presumably the government could choose to prosecute on count two as well. If it chose to do so. And that suggests there was an allegation made in one of the appellant's briefs that raised suspicion as to why it was the government proceeded with count two at all, suggesting, maybe more than suggesting, that the whole point of it was to try to insert this statutory language into the mix. Do you have any comments to that? Well, I will be candid with the court. I didn't indict this, but I'm familiar with the history behind it. We were familiar with the history of these sort of cases where allegedly blind mules are involved. We did look at the smuggling statute and felt that a permissive inference instruction was appropriate. And, you know, our thought was perhaps a jury might acquit on a conspiracy. Perhaps they might acquit on an attempted importation, but with a permissive That suggests that we would send the entire case back for retrial if we were to disagree with your position on count two? I don't think so, because I don't think that, you know, obviously there's an allegation by the defense that we were using this as a throwaway. Well, regardless of whether it was intentional or not, you just said, you know, you think it's much harder to convict if you don't, you know, if this isn't in the mix. So if we believe that the instruction was erroneous on count two and it shouldn't have been in the mix, then you just told us that it might be more difficult to convince the jury of the other. So how could that be? Isn't that why Congress put the language in Section 545? And that would be my response. And my response would be that, you know, we're entitled to charge that. It wasn't certainly out of a We're entitled to charge that, but if we were to hold that the instructions were incorrect, my question really goes to, I know you don't agree that they were incorrect, and I'm not suggesting you are giving that argument up, but I am asking you, if we were to say that that instruction was wrong, why would that be harmless even with respect to the other counts? And, again, it would simply be because I think that instruction is plainly limited to the smuggling count, and the other instructions for the other counts are distinct from that, and, you know, we have to assume that the jury followed those. And I would simply say, I know I'm over my time, the only reason that was included was not as a throwaway count, but as a potential last resort. Okay. Thank you, counsel. Thank you. Mr. Avery. Before you go, counsel, let me ask you a question. Mr. Avery will know. Maybe he does through discovery. With regard to the other cases against the other drivers, did any of them own their own trailer that was also used in a smuggling method, a hidden compartment as Mr. Hwang did? No, they did not, Your Honor. And that is the critical distinction, not only between those other cases, but all the cases before this Court, in not one of those cases did the driver own an identical trailer with an identical concealed compartment that was found with another person carrying drugs. And that pertains to the sufficiency of the evidence rather than that. Oh, yes. Absolutely, Judge. Thank you very much. Mr. Avery, we'll give you two minutes for rebuttal. We've kept opposing counsel extra about that long. Okay. Thank you, Your Honors. First of all, I would point out that one of the drivers that was a hung jury in that case had the same kind of truck. Actually, there were two people in that truck. It was a concealed compartment. There wasn't the registration issue, but I think they acquitted in that case. Those were the two cases, the two defendants that were tried together in eastern Washington. Mr. Avery, I'm not sure I understood what you just said. The question that I posed to the prosecutor was whether or not there were any other drivers who had trailers owned by them with hidden compartments. And what are you saying about the Findlay-Ostenbrook trailer? I'm actually talking about Mr. Amandeep Sidhu and Gurinder Shoker. They were in a truck that had a similarly concealed compartment, and they were acquitted. But you're right, Your Honor. There's nothing on the record, anyway, that they had been convinced to have that trailer registered in their name or traded trailers with somebody else. And so we really don't know what's going on behind that situation. Counsel, I would like you, before your time is out, to comment on the question about what would be the effect of our determining that the instruction on count two is erroneous. Assuming for the sake of the question that we were to do so, and assuming further that we presume that juries do try to follow their instructions, why would we not still affirm on counts one and three? Your Honor, the first thing that leaps to mind is that I don't think it's impossible for a person to find knowledge of marijuana with respect to one count and to suspend or entertain a doubt with respect to the same exact factual question, did this person know of the marijuana in the same concealed compartment with respect to these two other counts, which had much lengthier sentencing problems. The government's counsel has admitted that it was easier to get the conviction with respect to the smuggling count, and Congress made it that way. But Congress also gave a five-year mandatory maximum with that same smuggling conviction. And I'm not saying that count two should be the only count that's reversed, of course, but if we're going to talk about Congress's intent, then they didn't, I guess, intend that people be sentenced for over five years based on these presumptions and inferences. I would also point out that there is case law from this court that says that the regular burden of proof instructions and other kinds of instructions that we've been talking about don't cure these permissive inferences. I've cited the cases in the brief. One of them is United States v. Smith. Another case is a Supreme Court case, actually, that Cuellar v. California talks specifically about how it's impossible to figure out what the jury did and what they thought about when you have these inference kind of instructions. And the concurrence is especially elucidating, I think, in that case. It talks about how your regular harmless error analysis doesn't really work when it's been determined that there's been an improper inference because you can't just weigh all the evidence because that still doesn't allow you to know what the jury did when they got behind the jury's door. There's just no way to know whether they listened more intently to the shall be deemed sufficient to convict instruction or you may permit the existence of marijuana to give you knowledge of marijuana. I know my time's up, but I don't see how human beings can distinguish counts one and three from counts two. He either knew of the marijuana or he didn't know of the marijuana, and the jury should be allowed to figure that out for themselves. Thank you, counsel. Thank you, Your Honor. Mr. Avery, I'm wondering how that argument holds with regard to a conspiracy count, though, because the defendant could certainly be convicted for joining a conspiracy simply because of the fact that he owned a truck with a concealed compartment in it and somebody else tried to carry, who belonged to the conspiracy, tried to carry a load of drugs across the border with a similar trailer. Your Honor, that's a great question, and my answer is that there was no evidence whatsoever presented that that is how he joined this conspiracy. I mean, the parties have agreed, it's in the briefs, that the only question is whether he knew that marijuana was in this concealed compartment, and if there was some other kind of evidence about how he might have otherwise joined the conspiracy without really knowing that there was marijuana in his trailer, the trailer he was pulling, then that would be problematic, perhaps, but I still think under a regular harmless error analysis you weigh the evidence in light of your question, and it's not been proven. There's still possible harm, and so if there was some evidence of other stuff, that would be problematic, but I don't think in light of what's happened in this trial that it is. Thank you, counsel. Your time has expired. We thank both parties for their arguments. They've been very helpful. The case just argued is submitted, and we will stand adjourned for the day. Thank you, Your Honor. Mr. Gallagher, nice to see you again. Nice seeing you too, Judge. I can't tell you how hard it was to keep my mouth shut. I was going to compliment you on the quality of your argument. Thank you. Nice job, David. We're back tomorrow.
judges: Graber, Tallman, Clifton